chief justice, writing the opinion in affirmance of the judgment, and sustaining the ruling of the trial judge, says: "Granting that the right of a director to resign is absolute, and admitting that no writing and no particular form of words is essential, it is nevertheless true that any communication, in order to constitute a valid resignation, must express a definite and present intention to withdraw from the office in question, and must be addressed to the company, or the board of directors, or to an officer, as such, with the explicit purpose of having it reach the company or board of directors through him. I do not think the facts relied on to establish a resignation here are as strong as they were in *Kindberg* v. *Mudgett,* 24 Wkly. Dig. 229. In that case, it appeared that the defendant had stated orally to several trustees that he would have nothing more to do with the company, besides writing a note to that effect to one of them. Yet, even under those circumstances, the court held that defendant's declaration could not be construed as a resignation." A careful examination of the evidence in the present case in support of the alleged resignation of the defendant Colwell as a director fails to show any fact in addition to those presented in the case cited; and for the same reasons, therefore, for which the action of the trial judge in directing a verdict for the plaintiff in that case was sustained, the learned chief justice must be held to have erred in submitting the wholly uncontroverted facts as to such alleged resignation to the jury, in the present case, and in refusing to charge as requested by plaintiff, and denying plaintiff's motion to set the verdict aside.

Judgment reversed; new trial ordered; costs to abide event.

---

*In re* MATTHEWSON'S ESTATE.

(*Surrogate's Court, New York County.* November, 1888.)

COSTS—IN SURROGATE'S COURT—ALLOWANCE TO FREEHOLDER'S COUNSEL.

An allowance to a freeholder's counsel, on a sale of a decedent's real estate, which exhausts the fund, is not "reasonable," within Code Civil Proc. N. Y. § 2563, which provides that the freeholder may be allowed a reasonable sum by the surrogate for the necessary services of his counsel, as the amount recovered, though not a test of the value of the attorney's services, is, in some degree, a proper measure of compensation, and especially when the attorney from the first was aware of the limited amount of property involved.

Application for a sale of the land of John Matthewson, deceased, for the payment of debts. See 3 N. Y. Supp. 660.

*Olin, Rives & Montgomery,* for petitioner.

RANSOM, S. The Code (section 2563) provides that the freeholder may be allowed a sum deemed by the surrogate to be reasonable for the necessary services of his counsel. An allowance which exhausts the fund, and defeats the very object of the proceeding, can hardly merit the term "reasonable." The fees of the freeholder are fixed by statute, and can only be dismissed by the surrogate. The only direction in which the reduction is possible is in respect of the sum allowed for the services of his counsel. In this proceeding counsel were aware of the amount of labor that would be involved, and should not now complain that their compensation is insufficient. They were also aware of the amount of property applicable to the payment of debts. While, therefore, the amount of recovery is not a test of the value of services of counsel, certainly, when the proceeding is virtually *ex parte,* and the amount of recovery possible is limited by very narrow bounds, the attorneys should not be disappointed if the amount of benefit accruing is regarded as, in some degree, a proper measure of compensation. To adjust the allowance in the manner claimed would exhaust the estate, and produce a result that should be avoided if possible, viz., a proceeding for the benefit of creditors, in which they are successful, and yet are injured, for the cost of procuring the decree would equal or exceed the amount realized, and an asset be annihilated which might

otherwise be applied in the payment of debts. The suggestion is also pertinent that experienced counsel might have foreseen that the result of this proceeding would be worse than futile, and that circumstances might exist which would call for a condemnation of their action in advising the course adopted. This is especially true when, as in this case, the attorneys for petitioning creditor acted as the counsel for the freeholder, and only make this application after having unsuccessfully applied for an allowance in the capacity of attorneys for the petitioner. These views are stated for the purpose of illuminating the path by which the conclusion sought is reached, viz., the definition of the word "reasonable," as applied to the peculiar circumstances of this case. The sum of $75 is allowed for the services of counsel to the freeholder.

---

### In re LINDLEY.

#### (Surrogate's Court, New York County. May, 1889.)

GUARDIAN AND WARD—APPOINTMENT OF GUARDIAN—POWER OF SURROGATE.

Code Civil Proc. N. Y. §§ 2821, 2825, which give the surrogate power to appoint general guardians of infants, and provide that on the return of the citation the surrogate must make such a decree as justice requires, do not authorize the surrogate, on appointing a guardian, to provide that he shall notify the father of the ward of all matters affecting the ward's person and estate, allow him to visit and be visited by the ward, and consult him as to the ward's management, and the surrogate has no such authority.

Application for the appointment of a guardian of the person and estate of Mabel Lindley, an infant.

*Townsend Wandell,* for petitioner.    *A. H. Ely,* for Edwin G. Lindley, the infant's father.

RANSOM, S. Application is made by the maternal grandmother of the female infant for the appointment of herself as guardian of the person of the infant, and of the Farmers' Loan & Trust Company as guardian of the estate. The petition is regular. Consent of the petitioner to her appointment, and of the Farmers' Loan & Trust Company to its appointment, are attached. The consent of all the relatives, being maternal uncles and aunt, is also submitted. The application is not opposed by the father of the child, but he desires that the decree to be entered shall provide that the Farmers' Loan & Trust Company shall notify him, or such person as he may designate, of any and all matters which may in any wise affect the estate of his child, and that a copy of each and every paper or notice which may be served upon it as such guardian shall be sent either to him, or to a person designated by him; and that the guardian of the person shall, on any and all suitable and proper occasions, allow him to visit and be visited by said child; and that she, the guardian, shall, so far as practicable, consult him and advise him in regard to the general management of said infant; and that, further, she shall cause copies of all and every paper served upon her as guardian of the said infant, in any actual or special proceeding, to be sent forthwith to him, or to any person he may designate. A certified copy of an order of the supreme court, duly entered on the 29th day of November, 1882, in this department, adjudging the father of the infant to be an habitual drunkard, and appointing Charles R. Stilwell, of the city of New York, a committee of his person and estate, is also submitted. The father, or the attorney representing him, hands in a memorandum, by which he endeavors to show that the surrogate has the power to make the decree asked for by him. He cites section 2821 of the Code of Civil Procedure, which simply gives the surrogate the power to appoint a general guardian, and refers to Story's Equity Jurisprudence, §§ 1341–1351, as to the extent of the jurisdiction of the court of chancery. Reference is further made to the *Case of the Earl of Ilchester,* 7 Ves. 381, where Lord ELDON observes that, "though the effect of the ap-